CHRISTOPHER CHIOU
Acting United States Attorney
District of Nevada
Nevada Bar Number 14853
ALLISON REESE
Nevada Bar Number 13977
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
702-388-6336
allison.reese@usdoj.gov
*Attorneys for the United States of America*

FILED.

DATED: 4:29 pm, April 29, 2022

U.S. MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  2:22-mj-00343-DJA |
| Plaintiff, | **COMPLAINT** |
| vs. | <u>VIOLATIONS:</u> |
| CLARENCE MEEKINS, | 18 U.S.C. § 922(o) – Possession of a Machinegun |
| Defendant. | 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D) – Engaging in the Business of Dealing and Manufacturing Firearms Without a License |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned

Complainant, being duly sworn, deposes and states:

## <u>COUNT ONE</u>
*Illegal Possession of a Machine Gun*
(18 U.S.C. §§ 922(o))

On or about March 23, 2022, in the State and Federal District of Nevada,

**CLARENCE MEEKINS**,

defendant herein, did knowingly possess a machinegun, to wit: a machine gun conversion

device with no manufacturer's marks or serial number, used to modify a Glock semi-

automatic firearm to fire as a fully automatic weapon, enabling said firearm to automatically

1  shoot more than one shot, without manual reloading, by a single function of the trigger, all in

2  violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

3  **COUNT TWO**

*Engaging in the Business of Dealing or Manufacturing Firearms Without a License*

4  (18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D))

5  From on or about March 22, 2022, and continuing to or about April 28, 2022, in the

6  State and Federal District of Nevada,

7  **CLARENCE MEEKINS**,

8  defendant herein, not being a licensed dealer and manufacturer of firearms within the

9  meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of

10  dealing in and manufacturing firearms that is, the defendant manufactured and sold

11  privately made firearms and machine gun conversion devices, all in violation of Title 18,

12  United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

13  **PROBABLE CAUSE AFFIDAVIT**

14  Your Complainant, as a Special Agent with the Bureau of Alcohol, Tobacco,

15  Firearms, and Explosives (ATF), states the following as and for probable cause:

16  1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and

17  Explosives (ATF), a component of the United States Department of Justice, and have

18  been so employed since May 2016. I am currently assigned to the ATF Las Vegas Group

19  II Crime Gun Intelligence Task Force. As an ATF Special Agent, I have successfully

20  completed the Criminal Investigator Training Program at the Federal Law Enforcement

21  Training Center and Special Agent Basic Training at the ATF National Academy.  The

22  training that I received at the academy included formalized instruction in, among other

23  things: firearms, drugs, and violent crime-related investigations, familiarization with

24  United States firearms laws, financial investigations and money laundering, identification

2

and seizure of drug and firearms tracking related assets, physical and electronic surveillance, weapon qualification and tactics, operation and use of confidential sources, and undercover operations.

2.     As an ATF Special Agent, I have conducted and participated in both state and Federal investigations involving the illegal possession and trafficking of firearms. I have investigated and assisted in the prosecution of criminal street gangs engaged in illegal narcotics and firearms trafficking. During these investigations, I have participated in and/or served as the primary case agent in cases involving various types of investigative techniques, including the use of electronic surveillance, assistance from undercover agents and informants, and the controlled purchases of firearms and narcotics from suspects. I have also participated in physical surveillance operations and the execution of state and federal arrest warrants and search warrants, resulting in state and federal prosecution of defendants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, pen registers and trap and trace devices, financial records, utility records, and telephone toll and subscriber records. My work with informants and cooperators has involved, among other things, monitoring meetings and recorded conversations, and generally evaluating the reliability and truthfulness of an informant/cooperator. Because of my training and experience, I have become familiar with the manner in which illegal firearm and drug traffickers smuggle, transport, store, conceal, and distribute firearms and drugs, as well as how they collect and launder proceeds related to such activities. I am also familiar with the manner in which these individuals use telephones, coded communications, false or fictitious identities, and other means to facilitate illegal activities and thwart law enforcement investigations. I have also consulted and discussed these

1    investigations with other law enforcement officers and agents who are experienced in

2    these types of investigations.

3        3.    I have been involved in an investigation, which is the subject of this

4    Affidavit. Due to my personal participation in this investigation and reports made by other

5    ATF Agents, Las Vegas Metropolitan Police Department (LVMPD) Detectives, and other

6    Law Enforcement Officers, I am familiar with the facts and circumstances surrounding the

7    investigation. My training and experience as a Special Agent, including participation in

8    this investigation, form the basis for opinions and conclusions set forth below.

9        4.    The following factual statement is a brief summary of the information that I

10   have gained from my personal involvement in the investigation and from various

11   intelligence sources currently available with respect to this investigation. Unless otherwise

12   noted, if I assert that a statement was made, the information was provided by an ATF

13   Special Agent, LVMPD Detective, or another law enforcement officers (who may have

14   had either direct or hearsay knowledge of the statement) to whom I have spoken to or

15   whose reports I have reviewed. This affidavit is being submitted for the limited purpose of

16   seeking authorization for a criminal complaint. Therefore, I have not set forth each and

17   every fact learned during the course of this investigation. However, facts not set forth

18   herein are not being relied upon in reaching my conclusion that the requested criminal

19   complaint should be issued based on the probable cause contained herein. All times

20   contained herein are approximate. I have set forth only the facts that I believe are

21   necessary to establish probable cause.

22                         **FACTS ESTABLISHING PROBABLE CAUSE**

23       5.    On or about March 22, 2022, agents and officers assigned to the

24   LVMPD/ATF Crime Gun Intelligence Center (CGIC) Task Force were informed by an

4

ATF Confidential Informant[1] (hereinafter "CI-1") that he/she met an individual who went by the name "G" that was engaging in the manufacturing of privately made firearms ("PMFs") and machinegun[2] conversion devices ("MCDs") utilizing additive manufacturing, commonly identified as: "3-D Printing." One type of a MCD is commonly referred to as a "Glock Switch," also known as a Glock conversion device. A Glock switch is a machinegun under the National Firearms Act (NFA), 26 U.S.C. § 5845(b). Glock conversion devices can be attached to a Glock, semi-automatic pistol, converting the semi-automatic firearm into a fully automatic machinegun.  The individual, "G," manufacturing and trafficking firearms and firearms related parts was later identified as the defendant, CLARENCE MEEKINS.

6.      CI-1 was introduced to MEEKINS through an unidentified male on or about March 22, 2022. The unidentified male advised CI-1 that MEEKINS was from New York and was selling firearms and MCDs that MEEKINS built at home, utilizing a 3-D printer. On this same date, CI-1 was introduced and invited to MEEKINS' residence. MEEKINS provided the CI-1 with an address of: 7967 NARNIA AVENUE, LAS VEGAS, NEVADA, 89113 (hereinafter the "Residence"). The conversation below depicts the communications between CI-1 and +1-XXX-XXX-8404 (hereinafter "TT-1").

---

[1] ATF Las Vegas has been utilizing a confidential informant ("CI") beginning in February 2021.  The CI has been working for ATF for approximately over 3 years.  CI's information has proven reliable in the past on several investigations.  All information provided by CI is corroborated by law enforcement investigators. CI has a signed cooperation agreement and pled guilty to one count of Conspiracy to Make a False Statement in Acquisition of a Firearm and one count of Conspiracy to Distribute a Controlled Substance.  CI is working for consideration of CI's charges.

[2] The NFA, 26 U.S.C. § 5845(b) defines the term "**machinegun**" as: "…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."

- TO TT-1: Where to go

- FROM TT-1: 7967 Narnia Ave

- TO TT-1: On my way

7.     While visiting MEEKINS at the Residence on the evening of March 22, 2022, CI-1 captured the following five images that depict what appears to be the frame portion of a firearm manufactured by a 3-D printer.  The five images are included below:











8.     In addition, the CI-1 captured two images depicting what appear to be a machinegun conversion device manufactured by a 3-D printer while visiting MEEKINS at the Residence that same evening. The two images are included below:





9.     On or about March 22, 2022, ATF agents conducted National Crime Information Center ("NCIC") queries of MEEKINS' criminal history and located the following felony convictions in New York:

///

///

8

a. Criminal Possession Controlled Substance-5th: Intent to Sell; Date of Conviction:  02/22/2006; Court:  Nassau County, NY Court; Case Number:  00406N-2006

b. Criminal Possession Controlled Substance-3rd: Narcotic Drug Intent to Sell; Date of Conviction: 01/18/2007; Court: Nassau County, NY Court; Case Number: 00106N-2007

c. Hobbs Act Robbery and Brandishing a Firearm During a Crime of Violence; Date of Conviction:  06/18/2015; Court: Eastern District of New York; Case Number: 2:12-cr-00164-LDW-GRB

10. Between March 22, 2022 and March 23, 2022, MEEKINS and CI-1 continued to exchange text messages regarding a future firearm transaction with TT-1.

11. On or about March 23, 2022, ATF agents reviewed a New York Department of Motor Vehicles (DMV) photograph of MEEKINS that was captured on or about November 13, 2015. ATF agents subsequently presented the aforementioned photograph to the CI who confirmed that the male in the photo (MEEKINS) was the male that CI-1 knew as "G."

12. On or about March 23, 2022, the ATF and the LVMPD conducted a controlled purchase operation of a MCD by CI-1 from MEEKINS. Prior to the transaction through text messages with TT-1, MEEKINS and CI-1 coordinated a time to meet at the Residence. Prior to the transaction and CI-1's arrival, MEEKINS was observed by surveillance units pacing back and forth, and up and down the street on Narnia Avenue throughout various times. Upon CI-1's arrival, MEEKINS was waiting at the corner entrance of the neighborhood and was waiting for CI-1 to turn into the neighborhood. During the transaction which occurred in the driveway of the Residence, MEEKINS entered CI-1's vehicle, and informed CI-1 that the MCD was still being

worked on, and that CI-1 would need to return later in the day for pick-up. MEEKINS

exited CI-1's vehicle, and proceeded into the Residence, and returned to CI-1's vehicle

with what appeared to be a privately made firearm (PMF) that CI-1 had seen the night

prior, with parts added to it. MEEKINS explained and showed CI-1 the PMF, and

informed CI-1 that the remaining parts would be in by the next Wednesday. CI-1 provided

MEEKINS with $500 of documented ATF funds to pay for the MCD that would be

picked up later in the day. The same $500 also served as a way for CI-1 to provide a

deposit for parts to be used on future PMF purchases. Shortly after, CI-1 departed the

Residence. Approximately one hour after waiting at a pre-determined location with agents

and detectives, CI-1 returned to the Residence to retrieve the MCD. Upon return to the

Residence, CI-1 pulled his/her vehicle into the driveway, and MEEKINS was located in

the garage. MEEKINS entered the passenger seat of CI-1's vehicle and began to

demonstrate how the MCD functions. MEEKINS informed CI-1 to be careful with the

switch because it's "Federal." MEEKINS proceeded to exit the vehicle, and CI-1 departed

the Residence to meet at a predetermined meet location and provided agents with the

MCD purchased from MEEKINS.

13.     On or about March 25, 2022, the aforementioned purchased MCD was sent

to the Firearms Technology Criminal Branch and a "Report of Technical Examination"

was provided to me. The MCD was identified as the following: Glock-Type 3-D printed

back plate device, white in color. The examination found that the MCD purchased from

MEEKINS was designed to, and through demonstration, successfully converted the

semiautomatic Glock Pistol into a machinegun.

///

///

14.     On or about March 29, 2022, the ATF and the LVMPD conducted another controlled purchase operation involving CI-1 and the purchase of one PMF from MEEKINS for $200, in addition to the $500 previously provided by CI-1 to MEEKINS on March 23, 2022. Prior to the transaction and through text messages with TT-1, MEEKINS and CI-1 communicated on or about the dates of March 27, 2022 through March 29, 2022, to coordinate the purchase of the PMF. After departing a pre-determined meet location on March 29, 2022, CI-1 proceeded to MEEKIN's Residence. CI-1 texted MEEKINS at TT-1 upon arrival at the Residence. CI-1 then proceeded to call MEEKINS at TT-1 to advise that CI-1 had arrived. MEEKINS opened the garage door, and then entered CI-1's vehicle in the front passenger seat carrying a red/pink colored box. Upon entry into CI-1's vehicle, MEEKINS opened the red/pink colored box and handed the firearm to CI-1. CI-1 examined the firearm and provided MEEKINS with the remaining $200 of ATF documented funds for the firearm. MEEKINS asked CI-1 if CI-1 needed bullets for the PMF, to which CI-1 agreed. MEEKINS exited CI-1's vehicle, entered the Residence through the garage door, grabbed three (3) rounds of Belom 9x19 ammunition, and returned to CI-1's vehicle. MEEKINS wiped the rounds of ammunition and placed them into the magazine of the PMF. CI-1 informed MEEKINS that he would be taking the PMF to an associate's house. The firearm did not depict any visible markings of manufacturer, model, or caliber, which is typical of a PMF. MEEKINS exited CI-1's vehicle, and CI-1 departed the Residence to meet at a predetermined meet location and provided agents with the firearm and ammunition purchased from MEEKINS.

15.     On or about April 6, 2022, the aforementioned purchased PMF was sent to the Firearms Technology Criminal Branch and a "Report of Technical Examination" was provided to me. The PMF was identified as the following: Glock-Type, 3-D printed

privately made firearm (PMF), 9mm Luger caliber firearm, no serial number, with included magazine. The examination found that the PMF purchased from MEEKINS was a "firearm" by definition, meaning it will expel a projectile by the action of an explosive and incorporating the frame of such a weapon.

16.     On or about March 31, 2022, the ATF and the LVMPD conducted another controlled purchase operation involving the use of CI-1 and an undercover agent (UC) and the acquisition of two MCD's from MEEKINS as well as to provide MEEKINS $1,300 in funds for parts and labor to be used on future PMF purchases. Upon arrival at MEEKINS' Residence, CI-1 pulled into the driveway and MEEKINS' garage door was observed to be open. MEEKINS was sitting in the driver's seat of a silver SUV with the vehicle door open and proceeded to approach CI-1's vehicle and enter the rear driver side seat. CI-1 remained in the driver's seat of CI-1's vehicle, and the UC remained in the front passenger's seat of CI-1's vehicle. MEEKINS provided CI-1 with two complete MCDs that he created through 3-D printing. The UC began speaking with MEEKINS regarding firearm frames he had been manufacturing in the same manner. The UC asked if MEEKINS could show the UC the frames. MEEKINS departed CI-1's vehicle and entered the Residence through the interior garage door. A few moments later, MEEKINS exited the same interior garage door with five 3-D printed Glock-style firearm frames and re-entered CI-1's vehicle from the rear driver's side. When asked how long it would take to complete assembly, MEEKINS claimed he could order the remaining parts and finish the firearms in one week. The UC proceeded to provide MEEKINS with one thousand, three hundred dollars ($1,300.00) of documented ATF funds for parts and labor for three pistols in which the UC selected the frames from those presented by MEEKINS. MEEKINS consented to CI-1 providing the UC with his number. The UC then sent a message to

MEEKINS at phone number XXX-XXX-8404 (TT-1). CI-1 and the UC departed the Residence to meet at a predetermined meet location.

17.    On or about April 6, 2022, the aforementioned purchased MCD's were sent to the Firearms Technology Criminal Branch and a "Report of Technical Examination" was provided to me. The MCD's were both identified as the following: Glock-Type, 3-D printed back plate device, white in color. The examination found that the MCDs purchased from MEEKINS were both a "machinegun" by definition, meaning they are both designed to and through demonstration successfully converted the semiautomatic NFC Glock pistol into a machinegun.

18.    On or about April 1, 2022, MEEKINS contacted the UC from the following facility: 702-XXX-1287 (hereinafter, "TT-2") stating that the aforementioned was MEEKINS' new number. Over the next days, MEEKINS texted and called the UC from TT-2 to coordinate firearms pick-up.

19.    On or about April 5, 2022, the ATF and the LVMPD conducted another controlled purchase operation involving the use of the same undercover agent and the purchase of two PMFs from MEEKINS, as well as to provide MEEKINS funds for parts and labor to be used on future PMF purchases for a total of $1,500. Upon arrival at MEEKINS' Residence the UC parked in the driveway and notified MEEKINS at TT-2 that the UC had arrived. Shortly after, the exterior garage door of the Residence opened, and MEEKINS exited the interior garage door from the main residence carrying a small United States Postal Service (USPS) shipping box and wearing black and red gloves. MEEKINS entered the front passenger seat of the UC vehicle and provided the UC with two completed 9mm caliber PMF pistols using 3-D printed frames and Glock-style components. MEEKINS function tested each firearm before handing it to the UC. MEEKINS showed

the UC several other completed frames that he had printed from the USPS box. MEEKINS

showed the UC a webpage on his phone with prices for component kits that he orders to

complete the assembly and make functioning firearms. The UC provided MEEKINS with a

total of one thousand, five hundred ($1,500.00) of documented ATF funds for the two

completed PMFs and two incomplete pistols. MEEKINS exited the UC vehicle and entered

the Residence through the interior garage door, and the UC departed to a predetermined

meet location.

20.     On or about April 6, 2022, the aforementioned purchased PMFs were sent

to the Firearms Technology Criminal Branch and a "Report of Technical Examination"

was provided to me. The PMFs were both identified as the following: Glock-Type, 3-D

printed privately made firearm (PMF), 9mm Luger caliber firearm, no serial number, with

included magazine. The examination found that the PMFs purchased from MEEKINS

were both a "firearm" by definition, meaning they will expel a projectile by the action of

an explosive and incorporating the frame of such a weapon.

21.     On or about April 11, 2022, the ATF and LVMPD conducted another

controlled purchase operation involving the use of the same UC and the purchase of one

PMF from MEEKINS for $500 including for parts and labor. The UC communicated with

MEEKINS on TT-2 on or about the dates between April 7, 2022, and April 11, 2022,

coordinating the purchase and status of other PMFs that MEEKINS had for sale. On or

about April 11, 2022, the UC drove to MEEKINS' Residence. Upon arrival, MEEKINS

gestured for the UC to come inside, and greeted the UC in the garage with a box full of

3-D printed pistol frames. MEEKINS then walked toward the interior entry door and

closed the garage door behind them. While walking inside of the Residence, the UC

located an unidentified black female adult, and two young juveniles. MEEKINS

14

introduced one of the children as his son. MEEKINS led the UC upstairs in the Residence

to a second-floor room which contained his 3-D printers and firearms

accessories/components. MEEKINS explained the functionalities of the printers and how

they worked. One of the machines was actively manufacturing an AR-style lower receiver.

MEEKINS explained that he sends some of the parts to a different address. MEEKINS

further displayed several pistol frames he had completed printing, as well as a slide with a

MCD attached. MEEKINS informed the UC that he was owed five hundred dollars

($500.00) for the parts he ordered for the firearms and labor, which the UC provided in

previously recorded and documented ATF funds. MEEKINS utilized a desktop computer

to show the UC the online pages and communities he was involved in related to firearms

parts and accessories. MEEKINS agreed to contact the UC upon completed assembly of

the firearm later in the day.

22.     During a second meeting with MEEKINS later in the afternoon on or about

April 11, 2022, MEEKINS and the UC agreed to meet in the parking lot near the Eastern

Beltway Shopping Center in Las Vegas, Nevada. MEEKINS arrived in a silver Honda Pilot

bearing New York license plate: JHT2470 riding in the front passenger seat. The

unidentified female from MEEKINS' Residence was driving, and both children were in the

rear seats. MEEKINS exited the Honda pilot and entered the front passenger seat of the UC

vehicle while carrying a USPS box. MEEKINS withdrew a black pistol comprised of the

same frame and slide assembly that MEEKINS had shown the UC at MEEKINS'

Residence. MEEKINS demonstrated the functionality of the firearm, explaining he had

some technical issues with the MCD, so he left it off. The UC inquired about the AR-

variant lower receiver that MEEKINS had been printing, and MEEKINS agreed to sell the

completed firearm to the UC after he did more research on completing the assembly. The

UC provided MEEKINS with one thousand dollars ($1,000.00) of previously documented ATF funds for the assembled pistol PMFs and for the parts and labor to be used on the completion of an AR-style variant. MEEKINS exited the UC vehicle and returned to the Honda pilot.

23.     On or about April 23, 2022, MEEKINS contacted the UC from TT-2 stating "complete." MEEKINS and the UC discussed pricing, and MEEKINS disclosed that they would be "square at 8." Based on my training and experience, the aforementioned reference likely refers to $800.

24.     On or about April 27, 2022, the UC contacted MEEKINS at TT-2 to confirm availability for pick-up the following day (April 28, 2022), to which MEEKINS disclosed that he would be ready.

25.     On or about April 28, 2022, MEEKINS responded from TT-2 informing the UC that he was ready and also wanted to discuss some "moves" with the UC. Based on my training and experience, the aforementioned reference likely refers to a business proposition involving additional firearms. The UC and MEEKINS agreed to meet at the Home Depot parking lot near the Eastern Beltway Shopping Center, which was the same location used for the deal that occurred on or about April 11, 2022.

26.     On or about April 28, 2022, ATF and LVMPD investigators initiated surveillance on MEEKINS' Residence. The Honda pilot was observed leaving the Residence and was followed by surveillance units. An LVMPD marked patrol unit initiated a vehicle stop on the Honda pilot on the 215 Freeway (Bruce Woodbury Beltway) at or near South Rainbow Blvd. A vehicle stop was conducted with Kimberly Meekins as the driver, MEEKINS as the passenger in the front seat, two juveniles in the back seat. MEEKINS was

1  placed in handcuffs and detained. All other occupants were detained during the execution of

2  the search warrant for the Honda pilot.

3         27.    On or about April 28, 2022, investigators conducted a search of the Honda

4  pilot, pursuant to a Federal Search Warrant (Case No. 2:22-mj-00317-DJA), which was

5  authorized by Magistrate Judge Daniel J. Albregts in the District of Nevada on or about

6  April 26, 2022. During the search of the vehicle, multiple items of evidence were seized

7  that are associated with manufacturing of firearms, to include, but not limited to, the

8  following:

9                  a.     One privately manufactured firearm (PMF) rifle bearing no serial

10                        number; and

11                 b.     One PMF Pistol bearing no serial number

12        28.    Following the search of the vehicle, investigators conducted a custodial,

13  recorded interview with MEEKINS at the Las Vegas ATF Field Office, located at 8965 S.

14  Eastern Ave. Suite 200 Las Vegas, Nevada, 89123. During this time, investigators

15  administered *Miranda* warnings to MEEKINS, and MEEKINS voluntarily waived his

16  rights and spoke with investigators. In response to questioning, MEEKINS stated that he

17  utilized a website called "Thingiverse" in order to download "STL" files related to

18  firearms printing and MCDs, and used Ebay to purchase additional firearms parts.

19  MEEKINS disclosed that there was a revolver, and a rifle located at his residence in the

20  bedroom. MEEKINS indicated that that he drove from New York when moving to Las

21  Vegas with the aforementioned firearms in June 2021. MEEKINS admitted to knowing

22  that he "100 percent" should not possess firearms.

23        29.    Continuing on the same date, investigators conducted a search of

24  MEEKINS' Residence, 7967 Narnia Avenue, Las Vegas, NV, pursuant to a Federal

Search Warrant (Case No. 2:22-mj-00315-DJA) which was authorized by Magistrate Judge Daniel J. Albregts in the District of Nevada on or about April 26, 2022. During the search of the residence, multiple items of evidence were seized that are associated with manufacturing of firearms, to include, but not limited to, the following:

  a. One Rossi SS Poly, 410 Gauge Shotgun, bearing serial number 7CS0878F6N

  b. One Smith & Wesson, Model 642-2, .38 Special, revolver bearing serial number CSL1279

  c. Three additive manufacturing (3-D) "Creality" printers bearing the following serial numbers: P202K01L19379, P202K01L0800, and P202J12L39958

  d. Three Devices which appear to be Machinegun Conversion Devices (One MCD was fully assembled, One MCD contained the backplate only, and one MCD contained an extended polymer leg and backplate that was not fully assembled) similar to those previously purchased by the UC on March 31, 2022.

  e. One 3-D printed AR-Variant frame

  f. Thirteen 3-D printed pistol frames

  g. Various magazines and ammunition

30. At the time of investigators' entry into the subject residence, investigators noticed what appeared to be two 3-D printers actively printing AR-Variant frames simultaneously.

31. On or about April 7, 2022, a Federal Firearms Licensee (FFL) database query was conducted on MEEKINS. The query confirmed that MEEKINS does not have,

1    nor did he ever have, a Federal Firearms License to engage in the business of dealing or

2    manufacturing firearms.

3        32.    A person who manufactures and sells firearms is required to hold a federal

4    firearms license ("FFL") in accordance with 18 U.S.C. § 923(a).  As an FFL, the licensee

5    is required to mark the firearms the FFL manufactures in accordance with 18 U.S.C.

6    § 923(i) and its implementing regulation at 27 C.F.R. § 478.92, which prescribes the

7    identifying markings (including serial number and manufacturer name) and the manner in

8    which each firearm is to be marked.  Additionally, 18 U.S.C. § 923(g)(1)(A) and its

9    implementing regulation at 27 C.F.R. § 478.123 prescribe record keeping requirements to

10   require the licensee to record specified information regarding the firearms manufactured

11   and information to whom the firearms are transferred.

12       33.    Upon transfer of a firearm to a person who does not hold an FFL, the

13   licensee transferring the firearm is required to execute a Firearms Transaction Record

14   (ATF Form 4473) and initiate a background check on the non-licensed individual in

15   accordance with 18 U.S.C. § 923(g)(1)(A) and 18 U.S.C. § 922(t) and their implementing

16   regulations at 27 C.F.R. §§ 478.124 and 478.102. In this particular case, firearms are being

17   sold by MEEKINS without a license, without filling out an ATF Form 4473, and without

18   conducting a background check to determine if the purchaser or transferee of the firearms

19   is prohibited by Federal or State law from receiving a firearm.

20                                CONCLUSION

21       34.    Based upon the information set forth in this application, your Complainant

22   respectfully submits that there is probable cause to believe that CLARENCE MEEKINS

23   committed the offenses of *Engaging in the Business of Dealing or Manufacturing Firearms*

24

*Without a License*, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a) and 924(a)(1)(D), and

*Transfer or Possession of Machinegun*, in violation of 18 U.S.C 922(o).

Respectfully Submitted,

*James Gustaw*

Special Agent James Gustaw
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone on this 29th day of April, 2022.

HONORABLE DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE